UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Charles Edward Elmore, | ) | Civil Action No. 5:20-cv-1265-KDW |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | ORDER |
| Andrew M. Saul, Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |

This social security matter is before the court pursuant to 28 U.S.C. § 636(c) and Local Civil Rule 83.VII.02 (D.S.C.) for final adjudication, with the consent of the parties, of Plaintiff's petition for judicial review. Plaintiff brought this action pursuant to 42 U.S.C. § 405(g) to obtain judicial review of a final decision the Commissioner of Social Security ("Commissioner"), denying his claim for Supplemental Security Income ("SSI") pursuant to the Social Security Act ("the Act"). Having carefully considered the parties' submissions and the applicable law, the court reverses and remands the Commissioner's decision for the reasons discussed herein.

I.      Relevant Background

A.      Procedural History

On February 8, 2017,[1] Plaintiff protectively filed for SSI under Title XVI of the Act, alleging a disability onset date of January 1, 2015. Tr. 266-71. The claim was denied initially on June 13, 2017, Tr. 136, and on reconsideration on August 30, 2017, Tr. 153-54. On September 27, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). Tr. 165. ALJ Peter Jamison conducted a hearing on November 14, 2018,[2] taking testimony from Plaintiff and Vocational Expert ("VE") Kenneth Oberlin. Tr. 35-69. Representing Plaintiff at that hearing was his

---

[1] The Application Summary is dated February 27, 2017. Tr. 266. However, the Disability Determination and Transmittal indicates a filing date of February 8, 2017. Tr. 136.
[2] A hearing was scheduled previously for March 13, 2018; however, Plaintiff failed to appear on

attorney, Brett Owens. Tr. 35. On this same date Plaintiff moved to amend his alleged disability onset date to February 12, 2017. Tr. 287. The ALJ denied Plaintiff's claim in a decision dated January 7, 2019. Tr. 12-29. Plaintiff requested review of this decision from the Appeals Council. Tr. 261-64. The Appeals Council denied Plaintiff's request for review on February 11, 2020, making the ALJ's January 2019 decision the final decision of the Social Security Commissioner. Tr. 1-5. Plaintiff brought this action seeking judicial review of the Commissioner's decision in a Complaint filed April 2, 2020. ECF No. 1.

     B.     Plaintiff's Background

Plaintiff was born in February 1962 and was 55 years old as of his amended alleged onset date of February 12, 2017. Tr. 288. In his form Disability Report-Adult dated February 27, 2017, Plaintiff indicated he completed the 12th grade in 1980,[3] did not attend special education classes, and did not complete any specialized job training, trade, or vocational school. Tr. 301. He listed his past relevant work ("PRW") as auto detailer (1982-2013) and auto laborer (2000-2013). *Id.* Plaintiff indicated he stopped working on March 2, 2015 because he could "not work with a felony." Tr. 300. Plaintiff indicated that his conditions became severe enough to keep him from working on September 9, 2016. *Id.* He described his medical conditions as ADD, bipolar, PTSD, manic depression, and nervousness. *Id.* Plaintiff indicated he was 5'9" tall and weighed 175 pounds. *Id.*

In a Disability Report-Appeal dated August 8, 2017, Plaintiff indicated changes in his condition that occurred approximately June 12, 2017 of chronic pain in his hips, left side, such that he "can't hardly walk." Tr. 321. Plaintiff also indicated that he had new mental limitations as of February 12, 2017, and he was "trying to get some mental help and has been denied." *Id.* Plaintiff

---

that date and the hearing was rescheduled. Tr. 71-72.
[3] At the administrative hearing Plaintiff testified that he dropped out of school before completing the tenth grade. Tr. 42.

noted that since he completed his last disability report he has no place to live, no job, and no money. Tr. 326. In a second Disability Report-Appeal dated October 5, 2017, Plaintiff indicated a change in his medical condition of "eyes, back & hip." Tr. 335. Plaintiff noted that he does not understand or remember what he reads or what is being said to him, and he cannot follow instructions. *Id.*

C.     Administrative Proceedings

On November 14, 2018, Plaintiff appeared with counsel at an administrative hearing in Columbia, South Carolina and testified regarding his application for SSI. Tr. 35. VE Kenneth Oberlin also appeared via telephone and testified at the hearing. Tr. 37.

1.     Plaintiff's Testimony

In response to questions from his counsel Plaintiff testified that he was 56 years old and "pretty much homeless from pillar to post, from town to town, someone will take [him] in." Tr. 41. Plaintiff stated that he went as far as 10th grade but did not finish the 10th grade, and he did not receive any type of GED or high school diploma. Tr. 42. Plaintiff testified that he last worked in 2015 water sanding automobiles at Econo Paint and Auto Shop. *Id.* Plaintiff stated that he did that job for about six months. *Id.* Plaintiff confirmed that he had been incarcerated for some time during the past 15 years. *Id.* Plaintiff testified that other jobs that he held over the past 15 years included "[l]andscaping, repairing, piecework – basically [he] mainly did only automobiles for the majority of [his] life." Tr. 43. Plaintiff testified that he did not currently drive and did not have a driver's license. *Id.* Plaintiff stated that he last had a driver's license in the 1980s. *Id.* He testified that if he needs to get somewhere, he either walks or rides the bus. Tr. 44. Plaintiff testified that he was not married, his last marriage was 1999-2000, and that he has adult children, and grandchildren. *Id.* Plaintiff stated that he did not have any resources to assist any of his family and he did not see them on a regular basis—maybe once every six months—because of his condition. Tr. 44-45. Plaintiff

3

testified that his mother lives in a "high rise" and he has nieces from his deceased sister, but they are "also distanced too on account of [his] condition." Tr. 45. Plaintiff stated that he does not have anyone he considers a friend, and he has never served in the military. *Id.* Plaintiff testified that he is right-handed, 5'9" tall, and with his condition he currently weighed 150-155 pounds, but he formerly weighed 170-175 pounds. Tr. 45-46. Plaintiff testified that he is unable to work because of his disease. Tr. 46. He stated that he has "highs and lows" and good days and bad days, he is unable to stay focused, and he has mental issues. *Id.* Plaintiff confirmed that he has been diagnosed as bipolar. *Id.* Plaintiff testified that on a typical day he wakes up with "great intentions" of accomplishing something and finding a job, but he is denied work because of his history of incarceration. Tr. 47. Plaintiff testified that he stays in shelters or on the streets. Tr. 48. Plaintiff stated that he would be allowed to stay in a shelter for 30 days, but he has never been able to complete 30 days because he does not have enough finances. *Id.* Plaintiff testified that some nights he sleeps on the streets, some nights in a car or on a bus, and some nights in a shelter. *Id.* Plaintiff indicated that he probably struggled with bipolar disorder "over the last 20 years, or even longer." Tr. 49. He testified that it has gotten worse as he has gotten older. Tr. 50. Acknowledging his lack of stable living arrangements, Plaintiff stated that his ability to sleep is "terrible" and he sleeps maybe three or four hours a night, or five hours if he is "really exhausted." Tr. 51. As to physical ailments, Plaintiff stated that he struggles with his back, diabetes, and acid reflux. Tr. 52. Plaintiff stated that he is on numerous medications and he tries to take them as prescribed but because of his mental condition he sometimes forgets or sometimes he does not want to take them. *Id.* Plaintiff testified that he has side effects if he does not take the medication because his "body aches for them." Tr. 52-53. Plaintiff stated that he has to go to a soup kitchen or to the park to get something to eat because he has to eat with the medication, or someone may take him out to eat or invite him

over to eat. Tr. 53. Plaintiff testified that he has painful back spasms that "can show up at any time." Tr. 53-54. Plaintiff testified that a back spasm feels like he is having a stroke or heart attack, and the pain comes up his side around his heart and arms and he "can't lift." Tr. 54. Plaintiff stated that he thought he could lift "30-40, maybe 50 pounds" but he tries to be careful because he is older. Tr. 54. Plaintiff stated that sometimes he "tenses" while walking and he has to "go and sit down, and just take [his] time and wait." Tr. 54-55. Plaintiff confirmed that if he does not experience pain or a spasm he has no issues with walking or standing. Tr. 55. Plaintiff stated that the spasms show up without warning and he experiences them at least twice a week. *Id.* Plaintiff testified that sometimes his "left arm gets real numb and tingles." *Id.* Plaintiff stated that he has experienced these issues while he was in the hospital. Tr. 56. Regarding his mental condition Plaintiff testified that his ability to concentrate and remember things is "terrible" and he does not remember anything unless he is able to write it down. *Id.* Plaintiff stated that he tries "very hard" to stay on task but has not been able to complete a week although he means well. Tr. 57. Plaintiff indicated that he can attend to his daily grooming if he has access to facilities. Tr. 57-58.

In response to questions from the ALJ Plaintiff confirmed that he has not worked since February 2017. Tr. 58. Plaintiff testified that he does not drive because he lost his driver's license for driving under suspension when he was in his 20s. *Id.* The ALJ asked about Plaintiff's prior employment in 2013 and Plaintiff was unable to recall it but thought he was working at a car dealership detailing automobiles. Tr. 59. He recalled that in 2007 he worked as a custodian in Washington, D.C. for five or six months. *Id.* Plaintiff testified that in 2006 he worked for John Harris Paint and Body Shop "off and on." Tr. 60. Plaintiff stated that all his jobs were full-time, but he worked for only six months. *Id.*

       2.     VE's Testimony

The VE identified Plaintiff's prior occupations as vehicle detailer, Dictionary of Occupational Titles ("DOT") number 915.687-034, unskilled, SVP:2, medium; automobile body preparer, DOT number 807.687-010, unskilled, SVP:2, medium; and janitor, DOT number 382.664-010, SVP:3, semi-skilled, medium. Tr. 62. The ALJ asked the VE to assume a hypothetical individual with the same age, education, and work history as Plaintiff with the following limitations:

> This hypothetical individual would be able to perform a full range of work at the medium exertional level, except as follows. This hypothetical individual could reach overhead with both arms occasionally; reach in all other directions with both arms frequently; could stoop occasionally; could crouch frequently; could crawl occasionally; could never be exposed to extreme cold; could never be exposed to vibration; would be limited to performing simple, routine, and repetitive tasks, but not at a production-rate pace; would be limited to simple work-related decisions; could interact with supervisors occasionally; could have no more than occasional superficial interaction with coworkers; no interaction with the public; could tolerate no more than ordinary and routine changes in a work setting and duties.

Tr. 63. The ALJ asked if that individual could perform any of Plaintiff's prior occupations, and the VE testified in the negative noting that the position of janitor was SVP:3 and all three of Plaintiff's prior jobs called for frequent overhead reaching. Tr. 63-64. The VE testified there would no medium-level jobs the hypothetical individual could perform, but he identified the following jobs available at the light level: Bagger of product or clothing garments, DOT number 920.687-018, light, SVP:1, unskilled, 360,000 jobs nationally; Stuffer, DOT number 789.687-130, SVP:2, unskilled, 467,000 jobs nationally; and Trimmer, DOT number 781.687-070, light, SVP:2, unskilled, 280,000 jobs nationally. Tr. 64-65. The VE stated that he identified these jobs based on his experience and not the DOT because the DOT refers to reaching in all directions. *Id.* The VE testified that he has observed these jobs over the last 45 years, and they do not require reaching above shoulder level. *Id.*

6

The ALJ modified his first hypothetical to allow that the "hypothetical individual could reach overhead with both arms frequently, and in all other directions with both arms frequently. All other limitations would be the same as in my first hypothetical." Tr. 65. The ALJ asked if the hypothetical individual could perform any of Plaintiff's prior occupations, and the VE testified that he could perform the vehicle detail and automobile preparer/autobody but not the janitor position because it is SVP:3. Tr. 65-66. The VE identified the following additional occupations that could be performed: Laundry worker, DOT number 361.684-014, medium, SVP:2, unskilled, 798,000 jobs nationally; Rack room worker, DOT number 920.665-014, medium, SVP:2, unskilled, 571,000 jobs nationally; and Kitchen helper, DOT number 318.687-010, SVP:2, unskilled, 1 million plus jobs nationally. Tr. 66.

The ALJ asked the VE to assume the same hypothetical individual as in the second hypothetical, with all the same limitations except the individual would be able to perform work at the light exertional level. Tr. 66. The ALJ asked if there would be "any transferable skills that would allow that hypothetical individual to perform any skilled work or semi-skilled work?" *Id.* The VE responded in the negative. *Id.* The ALJ asked if the hypothetical individual could perform any of Plaintiff's prior occupations and the VE responded in the negative noting that the prior occupations were at the medium level. Tr. 67.

The ALJ asked if the hypothetical individual would be able to perform "any occupation that exists in the national economy, skilled, unskilled, or prior work" if during an eight-hour workday the hypothetical individual would be "off-task at a minimum 20 percent of the time, and would be absent from work at a minimum, three days per month[.]" Tr. 67. The VE responded "no . . . on both areas" based on his experience and not the DOT. *Id.*

Plaintiff's counsel had no additional questions for the VE. Tr. 67.

II.    Discussion

A.    The ALJ's Findings

In his January 7, 2019 decision, the ALJ made the following findings of fact and conclusions

of law:

> 1.    The claimant has not engaged in substantial gainful activity since February 12, 2017, the amended alleged onset date (20 CFR 416.971 *et seq*.).
>
> 2.    The claimant has the following severe impairments: lumbar and cervical spine disorders, and affective disorder (20 CFR 416.920(c)).
>
> 3.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4.    After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except he can reach overhead with both arms occasionally. He can reach in all other directions with both arms frequently. He can stoop occasionally, crouch frequently, and crawl occasionally. He can never be exposed to extreme cold. He can never be exposed to vibration. He is limited to performing simple, routine and repetitive tasks, but not at a production rate pace. He is limited to simple work related decisions. He can interact with supervisors occasionally; can have no more than occasional superficial interaction with coworkers; and no interaction with the public. He can tolerate no more than ordinary and routine changes in work setting and duties.
>
> 5.    The claimant is unable to perform any past relevant work (20 CFR 416.965).
>
> 6.    The claimant was born on February 12, 1962 and was 55 years old, which is defined as an individual of advanced age, on the amended alleged onset date (20 CFR 416.963).
>
> 7.    The claimant has a limited education and is able to communicate in English (20 CFR 416.964).

8.    Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

9.    Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform (20 CFR 416.969 and 416.969(a)).

10.    The claimant has not been under a disability, as defined in the Social Security Act, since February 12, 2017, the amended alleged onset date (20 CFR. 416.920(g)).

Tr. 17-18, 20-21, 27-29.

B.    Legal Framework

1.    The Commissioner's Determination-of-Disability Process

The Act provides that disability benefits shall be available to those persons insured for benefits, who are not of retirement age, who properly apply, and who are "under a disability," defined as:

inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]

42 U.S.C. § 423(d)(1)(A).

To facilitate a uniform and efficient processing of disability claims, regulations promulgated under the Act have reduced the statutory definition of disability to a series of five sequential questions. *See, e.g., Heckler v. Campbell*, 461 U.S. 458, 460 (1983) (discussing considerations and noting "need for efficiency" in considering disability claims).  An examiner must consider the following:  (1) whether the claimant is working; (2) whether the claimant has a severe impairment;

(3) whether that impairment meets or equals an impairment included in the Listings;[4] (4) whether such impairment prevents claimant from performing PRW; and (5) whether the impairment prevents the claimant from performing specific jobs that exist in significant numbers in the national economy. *See* 20 C.F.R. § 416.920. These considerations are sometimes referred to as the "five steps" of the Commissioner's disability analysis.  If a decision regarding disability may be made at any step, no further inquiry is necessary. 20 C.F.R. § 416.920(a)(4) (providing that if Commissioner can find claimant disabled or not disabled at a step, Commissioner makes determination and does not go on to the next step).

A claimant is not disabled within the meaning of the Act if he can return to PRW as it is customarily performed in the economy or as the claimant actually performed the work. *See* 20 C.F.R. Subpart P, § 416.920(a), (b); Social Security Ruling ("SSR") 82–62 (1982). The claimant bears the burden of establishing his inability to work within the meaning of the Act.  42 U.S.C. § 423(d)(5).

Once an individual has made a prima facie showing of disability by establishing the inability to return to PRW, the burden shifts to the Commissioner to come forward with evidence that claimant can perform alternative work and that such work exists in the regional economy. To satisfy that burden, the Commissioner may obtain testimony from a VE demonstrating the existence of jobs

---

[4] The Commissioner's regulations include an extensive list of impairments ("the Listings" or "Listed impairments") the Agency considers disabling without the need to assess whether there are any jobs a claimant could do. The Agency considers the listed impairments, found at 20 C.F.R. Part 404, Subpart P, Appendix 1, severe enough to prevent all gainful activity. 20 C.F.R. § 404.1525. If the medical evidence shows a claimant meets or equals all criteria of any of the listed impairments for at least one year, he will be found disabled without further assessment. 20 C.F.R. § 416.920(a)(4)(iii). To meet or equal one of these Listings, the claimant must establish that his impairments match several specific criteria or be "at least equal in severity and duration to [those] criteria." 20 C.F.R. § 416.926; *Sullivan v. Zebley*, 493 U.S. 521, 530 (1990); *see Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (noting the burden is on claimant to establish his impairment is disabling at Step 3).

available in the national economy that claimant can perform despite the existence of impairments that prevent the return to PRW. *Walls v. Barnhart*, 296 F.3d 287, 290 (4th Cir. 2002). If the Commissioner satisfies that burden, the claimant must then establish the inability to perform other work. *Hall v. Harris*, 658 F.2d 260, 264–65 (4th Cir. 1981)*; see generally Bowen*, 482 U.S. at 146, n.5 (regarding burdens of proof).

### 2.    The Court's Standard of Review

The Act permits a claimant to obtain judicial review of "any final decision of the Commissioner made after a hearing to which he was a party." 42 U.S.C. § 405(g).  The scope of that federal court review is narrowly tailored to determine whether the findings of the Commissioner are supported by substantial evidence and whether the Commissioner applied the proper legal standard in evaluating the claimant's case.  *See id.*, *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Walls v. Barnhart*, 296 F.3d at 290 (citing *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990)).

The court's function is not to "try these cases de novo or resolve mere conflicts in the evidence." *Vitek v. Finch*, 428 F.2d 1157, 1157–58 (4th Cir. 1971); *see Pyles v. Bowen*, 849 F.2d 846, 848 (4th Cir. 1988) (citing *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986)).  Rather, the court must uphold the Commissioner's decision if it is supported by substantial evidence. "Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson*, 402 U.S. at 390, 401; *Johnson v. Barnhart*, 434 F.3d 650, 653 (4th Cir. 2005); *see also Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (explaining that, "whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high," as it means only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion"). Thus, the court must carefully scrutinize the entire record to

assure there is a sound foundation for the Commissioner's findings, and that the conclusion is rational. *See Vitek*, 428 F.2d at 1157–58; *see also Thomas v. Celebrezze*, 331 F.2d 541, 543 (4th Cir. 1964). If there is substantial evidence to support the decision of the Commissioner, that decision must be affirmed "even should the court disagree with such decision." *Blalock v. Richardson*, 483 F.2d 773, 775 (4th Cir. 1972).

C.    Analysis

Plaintiff alleges that the ALJ erred in (1) failing to find Plaintiff disabled under Listing 12.04, (2) failing to consider the combined effect of all of Plaintiff's impairments, and (3) failing to determine that Plaintiff meets an applicable GRID rule. Pl.'s Br. 2, ECF No. 11.

1.    Listing 12.04

Plaintiff contends that the ALJ erred in failing to find that he met Listing 12.04. Pl.'s Br. 2. The Commissioner asserts that substantial evidence shows the ALJ properly declined to find Plaintiff presumptively disabled under Listing 12.04. Def.'s Br. 5, ECF No. 12.

Listing 12.04 concerns "depressive, bipolar and related disorders" and contains A, B, and C criteria. *See* 20 C.F.R. 404, subpt. P, app. 1, § 12.04. Listing 12.04 may be satisfied if the claimant satisfies the "paragraph A" and "paragraph B" criteria or the "paragraph A" and "paragraph C" criteria. *Id.* The ALJ discusses only the "paragraph B" and "paragraph C" criteria in his decision.[5]

---

[5] The Commissioner argues that Plaintiff's failure to address Paragraph A should preclude relief and Plaintiff has not pointed to any evidence showing he could meet the criteria and the record supports a conclusion that he does not. Def.'s Br. 6-7. Paragraph A requires medical documentation of five or more characteristics of depressive disorder, or three or more characteristics of bipolar disorder. *See* 20 C.F.R. 404, subpt. P, app. 1, § 12.04. Because the ALJ does not address Paragraph A, and addresses only Paragraphs B and C, the undersigned finds that Plaintiff's failure to discuss Paragraph A is not at issue. Indeed, it could be viewed as error on the part of the ALJ for his failure to consider all of the elements of the listing. Disability is conclusively established if a claimant's impairments meet all the criteria of a listing or are medically equivalent to a listing. 20 C.F.R. § 416.925(c)(3). In order to determine whether a claimant's impairments meet or equal a listed impairment, the ALJ must identify the relevant listed impairments and compare "each of the listed

12

Tr. 18-20. To satisfy the "paragraph B" criteria, the mental impairments must result in either an "extreme" limitation in at least one or a "marked" limitation in at least two of the following four areas of mental functioning: (1) difficulties in understanding, remembering, or applying information; (2) difficulties in interacting with others; (3) difficulties in maintaining concentration, persistence, or pace; or (4) difficulties in adapting or managing oneself. 20 C.F.R. Part 404, subpt. P, app. 1, § 12.04. A "marked limitation" occurs when "functioning in [an] area independently, appropriately, effectively, and on a sustained basis is seriously limited." 20 C.F.R. Part 404, Subpart P, App. 1, 12.00.F.2. An "extreme limitation" occurs when a claimant is "not able to function in this area independently, appropriately, effectively, and on a sustained basis." *Id.*

Plaintiff alleges he satisfies the Paragraph B criteria—specifically he argues that he had marked limitations in social functioning (or interacting with others); in the ability to concentrate, persist, and maintain pace; and in the ability to manage himself.[6] Pl.'s Br. 3-4.

a.    Interacting With Others

The ALJ determined that Plaintiff had a moderate limitation in interacting with others. Tr. 19. The ALJ noted Plaintiff testified that he did not trust people, and he "reported difficulty holding onto a job, and a history of jobs in which he had been fired from all of them for being late or getting into disputes with supervisors (Ex. 4F/4)." *Id.* The ALJ cited to mental health records where Plaintiff "was noted to be argumentative, challenging, irritable, with intense or no eye contact during mental health appointment, but he also has substance abuse overly, and noted frustration for

---

criteria to the evidence of [the claimant's] symptoms." *Cook v. Heckler*, 783 F.2d 1168, 1173 (4th Cir. 1986). However, based on the analysis of the ALJ's consideration of Paragraphs B and C, any error for failing to consider Paragraph A would be harmless. *See, e.g., Morgan v. Barnhart*, 142 F. App'x 716, 723 (4th Cir. 2005) (applying harmless-error doctrine in social security appeal); *Mickles v. Shalala,* 29 F.3d 918, 921 (4th Cir.1994) (stating that it is harmless error when the ALJ would have reached the same result regardless of his error).

[6] The ALJ determined that Plaintiff had a mild limitation in understanding, remembering, or

not getting housing, food, and job assistance, blaming society for not helping people like him coming out of prison (Ex. 9F/4, 7, 10-11)." *Id.* The ALJ further noted, however, that Plaintiff "was pleasant, cooperative, and related well at the consultative examination, with fair eye contact, and good grooming (Ex. 4F/5-7)." *Id.* The ALJ also cited to medical records which indicated that Plaintiff reported that he got along well with coworkers and supervisors, he searches for work daily and finds "hustles to keep money in his pocket," and has the ability to grocery shop, "indicating he has interaction with others on a daily basis (Ex. 4F/4)." *Id.*

Plaintiff argues that the ALJ made his determination by relying only on Plaintiff's ability to work side jobs and grocery shop. Pl.'s Br. 3. Plaintiff then goes on to cite the same negative reported facts cited by the ALJ and argues the ALJ erred because he failed to consider this evidence. *Id.* As recounted above, it is obvious the ALJ considered all of the evidence; accordingly, his finding of no more than a moderate limitation is supported by substantial evidence.

b.    Concentrating, Persisting, or Maintaining Pace

The ALJ determined Plaintiff has moderate limitations with concentrating, persisting, or maintaining pace. Tr. 19. The ALJ cited to Plaintiff's hearing testimony about having poor concentration, needing to write things down to remember them, an inability to remember or follow instructions, and an inability to remember what was said at the beginning of a conversation. *Id.* The ALJ also noted Plaintiff's report that physical pain affected his "ability to concentrate and that he is often moody and anxious (Ex. 3F/2)." *Id.* The ALJ further noted:

> However, his mental status examinations noted generally no more than mild impairment in attention and concentration (Ex. 4F/5; 9F/5, 7, 10-11). Moreover, during the consultative psychological examination, the claimant had good attention and concentration, he had no difficulty following the conversation, distractibility was not observed, and he remembered three words immediately and two after a delay (Ex. 4F/5). Likewise, the claimant remembered questions and instructions during the

applying information. Tr. 18. Apparently, Plaintiff does not dispute this finding.

> exam and was able to follow a three-step instruction correctly (Ex. 45/5). He also
> reported filling out forms to volunteer with seniors in November of 2017 (Ex. 7F/2).

*Id.* Citing to an October 5, 2017 Disability Report-Appeal in which he describes problems with

understanding what he reads or what is said to him, Plaintiff again argues that the ALJ failed to

consider all the evidence. However, "an ALJ is not required to provide a written evaluation of every

piece of evidence, but need only 'minimally articulate' his reasoning." *Jackson v. Astrue*, No. 8:08–

2855, 2010 WL 500449, at \*10 (D.S.C. Jan. 19, 2010) (collecting authority from 7th, 8th, 10th and

11th Circuits), *adopted by* 2010 WL 500449 (Feb. 5, 2010). The ALJ articulated his reasoning, and

in doing so cited to medical records from the same time as Plaintiff's Disability Report-Appeal. Tr.

19 (citing Sept. 28, 2017 mental status examination that indicated Plaintiff's concentration was

"good." Tr. 545.). The ALJ's finding of moderate limitations in concentration, persistence, or pace

is supported by substantial evidence.

c.    Adapting or Managing Oneself

The ALJ found that Plaintiff had mild limitation in adapting or managing oneself, noting

that Plaintiff "reported the ability to cook, perform all household chores, prepare meals, grocery

shop and perform yard work (Ex. 4F/4)." Tr. 20. The ALJ also noted Plaintiff's testimony that he

walks where he needs to go or takes public transportation, and during his consultative examination

the examiner noted Plaintiff had good grooming. *Id.* Plaintiff argues that the "ALJ failed to consider

substantial evidence in the record that Plaintiff suffers a more significant limitation in this area of

functioning than was found by the ALJ." Pl.'s Br. 4. Plaintiff notes that "he is homeless, jobless,

and family-less" and that having money is a "trigger for him because he wants to use it to buy beer

or liquor." *Id.* Plaintiff also cites to the consultative examiner's note that he may need some

assistance handling funds because he is liable to buy and consume alcohol. *Id.* However, in the

referenced Mental Status Examination the examiner actually stated that *according to Plaintiff's*

15

*report*, he may need assistance handling funds. Tr. 460. The examiner noted in her Clinical Functional Evaluation: "He handles his grooming independently and can manage most household chores. He does not drive, but gets rides. He shops independently. He said having money may trigger him to buy beer or liquor."[7] *Id.*

Plaintiff does no more than look to pieces of subjective evidence he believes supports his own assessment of his mental functioning. *See Bowen v. Yuckert*, 482 U.S. at 146 and n.5 (noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to furnish medical evidence regarding his condition). The record contains no medical documentation indicating that Plaintiff had marked or extreme limitations in any of the Paragraph B criteria.

It is, generally, the responsibility of the ALJ to decide the legal question of whether a listing is met by a claimant's impairments. *See* SSR 96-6p. After reviewing the record before the court, the undersigned finds that the ALJ followed the appropriate procedure for explaining his Listing determination. This allegation of error is dismissed.

2.    ALJ's Consideration of Plaintiff's Combined Impairments

Plaintiff asserts that the ALJ erred by "failing to properly consider the combined effect of Plaintiff's severe and non-severe, physical and mental impairments." Pl.'s Br. 5. The Commissioner contends that "the ALJ stated he 'considered all of [Plaintiff's] impairments individually and in combination'" and that "Plaintiff identifies no impairments that the ALJ allegedly failed to consider." Def.'s Br. 10. In reply Plaintiff argues that he "has several physical and mental

---

[7] In her Clinical Functional Evaluation, the examiner also addressed Plaintiff's Social Functioning and determined Plaintiff was "likely capable of conforming to the norms of a work situation if motivated to do so and he has done so in the past." Tr. 460. Regarding Plaintiff's Concentration, Persistence and Pace the examiner noted that Plaintiff "appears capable of sustaining concentration and persisting in work-related activities at a reasonable pace." *Id.*

impairments that the ALJ failed to consider in combination . . . and simply stating that he 'considered all of [Plaintiff's] impairments individually and in combination' is not determinative." Pl.'s Reply, ECF No. 13 at 3.

The regulation related to the consideration of multiple impairments provides that in determining whether an individual's physical or mental impairments "are of a sufficient  medical severity that such impairment or impairments could be the basis of eligibility" for benefits, the ALJ "will consider the combined effect of all . . . impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity." 20 C.F.R. § 416.923. If the ALJ finds a medically severe combination of impairments, the combined impact of the impairments will be considered throughout the disability determination process. *Id.* In *Walker v. Bowen*, 889 F.2d 47 (4th Cir. 1989), the court held that "the ALJ must adequately explain his or her evaluation of the combined effects of the impairments." *Id.* at 50.

Here, at Step Two of the sequential evaluation process the ALJ determined Plaintiff had the severe impairments of lumbar and cervical spine disorders, and affective disorder. Tr. 17. The ALJ also found Plaintiff had non-severe impairments of diabetes mellitus and gastroesophageal reflux disease ("GERD"). *Id.* At Step Three the ALJ stated that he considered all of Plaintiff's impairments individually and in combination, but could "find no evidence that the *combined clinical findings from such impairments* reach the level of severity contemplated in the listings, including 1.02, 1.04 and 12.04." *Id.* (emphasis added). The ALJ discussed Plaintiff's arm pain, back and neck problems, and his mental impairment. *Id.* The ALJ then determined Plaintiff had the residual functional capacity ("RFC") to perform medium level work with some exceptions. Tr. 20-21. The ALJ discussed Plaintiff's impairments both singly and in combination throughout his RFC analysis noting his physical and mental examinations. Tr. 22-26. For example, the ALJ noted

Plaintiff "had a normal physical and mental examination in January of 2017, with steady gait (Ex. 1F/62). He was diagnosed with lower back pain and arthritis, but noted to be stable with medications (Ex. 1F/62)." Tr. 24. The ALJ also cited to a May 2017 consultative examination where Plaintiff reported back pain that affected his ability to concentrate, but the examination revealed he had "full muscle strength in all extremities and neurological examination was benign (Ex. 3F/5-7)." *Id.* After discussing Plaintiff's impairments the ALJ noted that Plaintiff's conditions were "well accommodated by" his RFC taking into consideration the objective evidence of record and Plaintiff's mental and physical subjective complaints. Tr. 25.

It is evident that the ALJ did, in fact, consider the combined effects of Plaintiff's severe and non-severe impairments and thus the court should accept the truth of the ALJ's assertion. *See Sims v. Colvin,* Civil Action No. 0:14–1663–MGL–PJG, 2015 WL 5525096, at *6 (D.S.C. Sept. 17, 2015) ("[T]he Court is satisfied that, when the ALJ's opinion is read as a whole, it is clear that he considered the combined effect of Plaintiff's combined impairments. Further, '[the Court's] general practice, which [it] see[s] no reason to depart from here, is to take a lower tribunal at its word when it declares that it has considered a matter.'" *Hackett v. Barnhart*, 395 F.3d 1168, 1173 (10th Cir. 2005)).

Furthermore, although Plaintiff argues the ALJ failed to consider his impairments in combination, Plaintiff does not explain how this alleged failure affected the ALJ's ultimate conclusion. As the court concluded in *Wright v. Astrue*, Plaintiff has "done much less than is required." *Wright v. Astrue*, No. CIV.A. 2:10-2449-DCN, 2011 WL 5403104, at *8 (D.S.C. Oct. 18, 2011), *report and recommendation adopted,* No. CIV. 2:10-2449 DCN, 2011 WL 5403070 (D.S.C. Nov. 8, 2011). The *Wright* court noted:

> The plaintiff's objection stops largely at the accusation that the ALJ's consideration is too thin, which, as the plaintiff contends, is the appropriate legal point, considering

the applicable standard of review, but fails to take the additional step of suggesting how the outcome could have been different. In other words, there is a failure to demonstrate anything more than the harmlessness of the error.

To restate, the Court believes that the ALJ satisfied his obligation to treat the combined effects of all relevant impairments, in the first instance, and, further, that the plaintiff has not offered any reason to conclude that more would have produced a different result.

*Id.* The court finds the ALJ did not err in his consideration of Plaintiff's combined impairments, and concludes that even if he had, any such error would be harmless in light of Plaintiff's failure to identify any impairment the ALJ did not consider or the impact of a more detailed analysis on the ALJ's decision.

### 3.    Consideration of the Medical-Vocational Guidelines

Plaintiff argues that "there is substantial evidence in the record that supports a finding that Plaintiff meets Grid Rule 202.01" and according to that rule, "a person of advanced age with limited or less education and unskilled or no work experience will be rendered disabled." Pl.'s Br. 5. The Commissioner contends that the Grid rules did not direct a finding that Plaintiff was disabled. Def.'s Br. 11-12.

The Medical-Vocational Guidelines, also referred to as "the Grids," are guidelines, located at 20 C.F.R. Part 404, Subpart P, Appendix 2. *See Heckler v. Campbell*, 461 U.S. at 461. The Grids consist of three "Tables," each representing a different RFC, including sedentary (Table 1), light (Table 2), and medium work (Table 3). *Id.* Each table then accounts for other vocational factors, including age, education, and previous work experience. For each combination of factors, the Grids provide whether the claimant is "Disabled" or "Not disabled." *Id.* In considering a claimant's age, the Regulations establish particular age categories: (1) younger person (under age 50); (2) a person closely approaching advanced age (age 50-54); and (3) a person of advanced age (age 55 or older).

20 C.F.R. § 404.1563(c)-(e). As the ALJ noted in his decision, as of his amended alleged onset date Plaintiff was 55 years old—an individual of advanced age. Tr. 27.

Once an ALJ determines a claimant's RFC, he may use the Grids to determine the claimant's level of disability and potential for employment. *Walker v. Bowen,* 889 F.2d 47, 50 (4th Cir. 1989). The ALJ found that based on the record Plaintiff had the RFC to perform medium work with certain exertional limitations. Tr. 20. The ALJ noted that if Plaintiff had the RFC to perform the full range of medium work "a finding of 'not disabled' would be directed by Medical-Vocational Rule 203.12 and Rule 203.04." Tr. 28. These rules are found in Table 3 of the Grids that determines disability for individuals limited to medium work. 20 C.F.R. Pt. 404, Subpt. P, App. 2. Rule 203.12 refers to an individual of advanced age, with limited or less education with skilled or semi-skilled skills that are non-transferable and that Rule concludes that such an individual is not disabled. Rule 203.04 refers to an individual closely approaching retirement age with limited or less education and with skilled or semi-skilled skills that are non-transferable. That Rule also concludes that such an individual is not disabled. *Id.*

If the ALJ were to mechanically apply the Grids—even using the rules applicable to unskilled work experience—the Grids would direct a finding of not disabled based on Plaintiff's RFC for medium work. Because the ALJ found that Plaintiff's "ability to perform all or substantially all of the requirements of [medium] level of work has been impeded by additional limitations" he made use of a VE to consider whether jobs existed in significant numbers in the national economy that Plaintiff could perform. Tr. 28. Given certain vocational factors the VE testified that Plaintiff could perform the unskilled jobs of bagger, stuffer, and trimmer. *Id.* However, these jobs are all at the *light* level of work. At the administrative hearing the VE testified that an individual limited to reaching overhead with both arms occasionally—a limitation in the ALJ's

RFC—would be unable to perform medium-level jobs. Tr. 63-64. Therefore, even though the ALJ's RFC assessment concludes Plaintiff can perform medium work, with the additional limitations, Plaintiff is limited to light work and the ALJ should have considered Table 2 of the Grids. Under Rule 202.01, the Rule cited by Plaintiff, an individual of advanced age with limited or less education and unskilled work experience (or even skilled or semiskilled non-transferable work) would be deemed disabled.

Substantial evidence does not support the ALJ's finding regarding use of the Grids. Accordingly, the court finds it appropriate to remand on this issue.

III.    Conclusion

The court's function is not to substitute its own judgment for that of the ALJ, but to determine whether the ALJ's decision is supported as a matter of fact and law. Based on the foregoing, the court cannot determine that the Commissioner's decision on application of the Grid Rules is supported by substantial evidence. Based on the foregoing, the court hereby reverses the decision of the Commissioner pursuant to Sentence Four of 42 U.S.C. § 405(g) and remands the matter to the Commissioner for further proceedings consistent with this order.

**IT IS SO ORDERED.**

April 19, 2021                                Kaymani D. West
Florence, South Carolina                      United States Magistrate Judge